| | |
|---|---|
| JACQUELIN GOARD,<br>                    *Plaintiff,*<br><br>v.<br><br>CROWN AUTO, INC., *ET AL.*,<br>                    *Defendants.* | CASE NO. 6:15-CV-00035<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This case, brought by Jacquelin Goard ("Plaintiff"), concerns the repossession of her Honda Accord on June 17, 2015, by Midnight Express Auto Recovery, Inc., on behalf of Defendant Crown Auto, Inc., to which officers from the Lynchburg Police Department were called. Plaintiff seeks summary judgment against Defendants Jonathan Howard, Joseph McKinley, Edward Cook, and Ryan Ball ("Defendants") as to liability under 42 U.S.C. § 1983. (Dkt. 87-1 at 1). She argues that Defendants, acting under color of state law, violated her Fourth and Fourteenth Amendment rights to possession of property and due process by facilitating an unlawful repossession of her vehicle—effectively converting the private repossession into state action. Plaintiff does not seek judgment as to damages at this time. (*Id.*). Defendants responded with their own motion for summary judgment, arguing that their actions did not constitute state action in aid of a private repossession. Alternatively, they assert they are shielded from liability by qualified immunity. (Dkt. 101).

Because it is undisputed that Defendants Cook and Ball had no contact with Plaintiff during the incident in question, and therefore did not facilitate the repossession, summary judgment will be granted in their favor. As for Defendant McKinley, his involvement in the repossession rose to a level that may have violated Plaintiff's Fourth and Fourteenth Amendment rights. A reasonable jury could find facts sufficient to prove that his conduct constituted state

action in facilitation of a private repossession, but a reasonable jury could also find that McKinley remained sufficiently neutral and did not aid in the repossession. Accordingly, summary judgment on the merits will not be granted in favor of Plaintiff or Defendant McKinley. However, even construing the facts in Plaintiff's favor, because the line between permissible and impermissible police involvement in a self-help repossession is not clearly defined and Defendant McKinley's conduct did not constitute a clear violation, the Court will grant summary judgment in favor of Defendant McKinley on the grounds of qualified immunity.

As for Defendant Howard, there is a genuine factual dispute regarding his conduct. Plaintiff alleges that he threatened to arrest her if she did not surrender her vehicle for repossession. If true, this would amount to a clear constitutional violation—precluding qualified immunity. Defendant Howard asserts, however, that he threatened arrest only for disorderly conduct and Plaintiff was free to continue objecting to the repossession. The Court cannot, at this stage, resolve this factual dispute, and this question is crucial to the determination of whether Defendant Howard is liable. Accordingly, the Court will not grant summary judgment for Plaintiff or Defendant Howard regarding § 1983 liability, and he is not entitled to qualified immunity at this time.

## I. PROCEDURAL HISTORY

Plaintiff filed her initial complaint in October 2015 against seven defendants: Crown Auto, Inc. (the dealership that sought repossession of her vehicle); Midnight Express Auto Recovery, Inc. (the towing company that executed the repossession); Officer Howard; Officer McKinley; and John Does 1–3 (who were later identified at Defendants Cook and Ball). (Dkts. 2, 55). Defendants McKinley, Howard, Ball, and Cook then moved the Court to dismiss the Complaint, pursuant to Rule 12(b)(6), because (1) Plaintiff failed to state a plausible claim for

relief under 42 U.S.C. § 1983, and (2) they were entitled to qualified immunity. (Dkts. 27, 28, 55).

The Court denied that motion, finding that Plaintiff's allegations, taken as true, stated a plausible claim for relief based on Defendants violations of her Fourth and Fourteenth Amendment rights. *Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915 (W.D. Va. 2016). Furthermore, the Court held that Defendants' alleged actions would constitute a violation of "a clearly established right of which a reasonable person would have known." *Id.* at 919–21 (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013)). Plaintiff then filed a motion for summary judgment, and Defendants responded with their own motion for summary judgment. (Dkts. 87, 101). Defendants Crown Auto, Inc. and Midnight Express Auto Recovery, Inc. were subsequently dismissed by stipulation. (Dkts. 104, 110).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the

nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### III. FACTS IN THE RECORD

As stated at oral argument, the operative facts of this case are largely undisputed—at least with respect to Defendants McKinley, Ball, and Cook. Instead, the disagreement in this case is mostly about the legal import of those facts. As such, the Court will proceed with a brief recitation of the operative, undisputed, material facts, followed by the few disputed items in the record.

Matthew Snyder arrived at Plaintiff's residence in Lynchburg, Virginia, on the evening of June 17, 2015, to attempt to repossess her vehicle. (Dkt. 87-1 at 2; dkt. 102-1 at 20). As Plaintiff arrived in her vehicle, Snyder pulled his tow truck behind Plaintiff's vehicle. (Dkt. 87-1 at 2). Plaintiff then had a conversation with Snyder—in the presence of her mother—in which she objected to the possession and said it was a mistake. (*Id.*). Snyder observed that Plaintiff was upset about the attempted repossession. (*Id.*). Snyder then called the automobile dealer in order to "make sure it was still a valid repossession before [he] went any farther." (*Id.*). Plaintiff persisted that the repossession was a mistake. (*Id.* at 3).

After Snyder completed his call to the dealer, Plaintiff and her mother were angry, and Plaintiff's mother remained in the driver's side of the vehicle with the door open. (*Id.* at 2). Snyder then called the police department because Plaintiff and her mother "were getting hostile," and he did not "do anything else 'til the police department got there." (*Id.* at 2–3). Snyder did not hook up the vehicle to his tow truck before Defendants arrived. (*Id.* at 4). Snyder wanted police on the scene for his safety because he worried one of the women would try to kick him on the side of the head while he hooked up the vehicle. (Dkt. 102 at 8; dkt. 87-1 at 3). Snyder said

that Plaintiff and her mother were irate, shouted racial slurs at him, cursed, and threatened him. (Dkt. 102 at 8).

Defendants—all of whom are members of the Lynchburg Police Department, (Dkt. 87-1 at 5)—arrived in four separate police cars and found Plaintiff was resisting the seizure of her vehicle. (*Id.* at 3; dkt. 102 at 3–4). When Defendants arrived on the scene, Plaintiff was objecting to the repossession. (Dkt. 871-1 at 3). All four officers personally observed Plaintiff "yelling, being loud, flailing her arms or waving her hands in the air, cursing, and using racial slurs towards Snyder." (Dkt. 102 at 8).

Officer McKinley was the first officer to arrive at the scene. He went first to speak to Snyder, because he was the one who had called the police. (Dkt. 102-1 at 33–34; dkt. 102-3 at 30). He stated to Plaintiff, "I'll get your side of the story in just a minute." (Dkt. 102-1 at 34). Snyder explained that he was trying to repossess the vehicle, but he was concerned about his safety. (Dkt. 102-1 at 35). McKinley then left Snyder to talk to Plaintiff. (Dkt. 102-3 at 54–55). McKinley informed Plaintiff that he was going to "get both sides of the story," but that he typically talks first to the party who made the call. (Dkt. 102-1 at 36). He stated, "We don't need to make a scene out here . . . ." (*Id.*). McKinley then went back to Snyder to continue their conversation. At this time, Snyder attempted to show the repossession order to McKinley in order to prove he had been requested to repossess the car. (Dkt. 87-1 at 3; dkt. 102 at 2). McKinley testified that he "didn't really pay attention to the exact paperwork." (Dkt. 102-1 at 36).

McKinley then went back to Plaintiff and told her that Snyder believed he had a right to tow the vehicle and that Snyder said he would not leave until he takes the vehicle with him. (Dkt. 102-1 at 37–38). Plaintiff then explained why she felt the repossession was a mistake and unlawful, and tried to show him her paperwork. (Dkt. 102-1 at 37–38; dkt. 102-3 at 30). Officer

McKinley then stated that it was a civil issue and that "there's really nothing I can do about the situation." (Dkt. 87-1 at 4; dkt. 102 at 6; dkt. 102-1 at 38). McKinley told Plaintiff that "really the only reason I'm here at this point is to -- is to make sure nobody gets hurt 'cause the – for whatever reason, the tow truck driver felt threatened." (Dkt. 102-1 at 39).

Officer McKinley spoke to Plaintiff and stated that he "did not know what the mix-up could be," but "if the tow driver was wrong there was legal action she could take." (Dkt. 87-1 at 3–4; dkt. 102 at 4–5). McKinley also informed Plaintiff that "there was really nothing that I could do to keep him [Snyder] from repossessing the vehicle and there was nothing I could do to keep her from sitting in the vehicle because, you know, it's her vehicle and it's on private property." (Dkt. 102-1 at 39). Officer McKinley stated either to Plaintiff or her mother that it might be in Plaintiff's "interest to go ahead and comply with [Snyder] . . . . Then she could work it all out with the court." (Dkt 87-1 at 3–4; dkt. 102 at 6). Plaintiff was unable to recall the details of her conversation with McKinley, but she described him as being "calm" and "mellow" throughout the encounter. (Dkt. 102-3 at 55).

Around that time, Officer Howard arrived on the scene. (Dkt. 102-1 at 39). He had received a "give-assistance call," but did not know the precise details of the call: "I do remember something about a tow truck driver and a disorderly, threats going on . . . ." (Dkt. 102-2 at 45). He was "pretty sure that the tow truck driver [was] the one that called." (*Id.* at 61). When he arrived he observed Plaintiff talking to McKinley; she was "cursing" and "yelling." (*Id.* at 64). Officer Howard then went to talk to Snyder, who informed him that he was there to repossess Plaintiff's car, but she was irate and shouting racial slurs. (*Id.* at 67). Snyder stated that he had an order of repossession, but Howard did not ask to see it. (*Id.* at 69). Howard then went over to speak to Plaintiff in an effort to calm her down. (*Id.* at 70–72). Officer Howard relayed Snyder's message that if she did not turn over the keys, the tow would cost $200 extra for

rekeying. (Dkt. 87-1 at 4; dkt. 102 at 4). Plaintiff eventually relented and gave her keys to Snyder. (Dkt. 102-1 at 69–70).

During the encounter, Officer Howard repeatedly told Plaintiff that "he did not want to arrest her and gave her multiple warnings about her conduct." (Dkt. 102 at 9). Nevertheless, he did threaten to arrest Plaintiff on three separate occasions prior to Snyder requesting Plaintiff's key. (Dkt. 87-1 at 4; dkt. 102 at 7). The precise content of this threat is a key point of contention. One the one hand, Officer Howard asserts that his threats of arrest were for disorderly conduct; if she did not "calm down," he was "taking her to jail." (Dkt. 102-2 at 100). On the other hand, Plaintiff has testified repeatedly that Officer Howard said "I was going to go to jail if I didn't give them my car." (Dkt. 102-3 at 41, 48, 55, 57–58). Likewise, she described Officer Howard as "more hyped up" than McKinley and "ready to do something." (*Id.* at 40).

Officer Howard consulted Lieutenant Cook regarding the situation, and Officer Ball was present to assist the other officers. (Dkt. 87-1 at 4). Lieutenant Cook and Officer Ball[1] had no direct contact with Plaintiff. (Dkt. 102 at 9). None of the officers assisted Snyder with hooking the car to his truck, removed Plaintiff from her car, made any physical contact with Plaintiff, drew their weapons, raised their voices, or reached for their handcuffs. (*Id.*). Defendants did not tell Snyder that he was required to stop the repossession because of Plaintiff's objection. (Dkt. 87-1 at 5).

---

[1]     Plaintiff objected to the claim that Officer Ball had no contact with Plaintiff on the grounds that it contradicted another fact asserted by Defendants. (Dkt. 114 at 3). Defendants, in their briefing, stated, "Officers McKinley and *Ball* both informed Goard that a repossession is a civil matter and they could do nothing to resolve it, and they both advised Goard that she should seek assistance from the local civil courts." (Dkt. 102 at 9 (emphasis added)). This reference to Officer Ball appears to be a typographical error, seeing as the support for that claim cites actions by Officers McKinley and *Howard*, not Officer Ball. In fact, Defendants cited deposition testimony of both Plaintiff and Officer Ball that unequivocally supports the claim that Officer Ball had no contact with Plaintiff. (*Id.*). Seeing as the only basis for Plaintiff's objection to this fact was the contradiction caused by an apparent typographical error, the Court will treat this fact as undisputed: Officer Ball had no direct contact with Plaintiff.

Defendants had been trained to handle civil disputes by (1) "referring them to the civil court to speak with the court clerk to point them in the right direction," (2) "direct[ing] all parties to handle it through a lawyer and the court," and (3) "tell[ing] the people that they needed to sort it out through a lawyer within the appropriate court system." (Dkt. 87-1 at 4–5).

## IV. DISCUSSION

### A. Applicable Law

### 1. Due Process Under the Fourth and Fourteenth Amendments

In order to establish a claim under 42 U.S.C. § 1983, a claimant must satisfy two basic elements. "First, the plaintiff must allege that some person has deprived him [or her] of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toldeo*, 446 U.S. 635, 640 (1980). It is undisputed that Defendants were on-duty police officers who arrived in their police cruisers wearing their official uniforms. As such, the color-of-state-law element is easily satisfied here; any actions by Defendants were certainly taken "under color of state or territorial law." The closer question is whether Plaintiff has satisfied the first element: Did Defendants deprive her of a federal right?

The Supreme Court has held that possessory interests in property trigger "the procedural safeguards of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972). Likewise, under the Fourth Amendment, a seizure has occurred when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992). Thus, in order to establish a violation of procedural due process under the Fourth and Fourteenth Amendments, "plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005).

As the individual who actually towed the Plaintiff's vehicle, Snyder undoubtedly deprived Plaintiff of her property interest in her vehicle. It is undisputed that (1) Plaintiff had a property interest in her vehicle; (2) her vehicle was seized by Snyder; and (3) the seizure occurred without due process of law. However, it is also well established that in most instances constitutional protections do not extend to the actions of private parties. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances."); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). The crux of this case, then, is whether Defendants played a significant enough role in the repossession such that *they too* deprived Plaintiff of her property interest by converting the otherwise private repossession into a state action. In essence, the Court must determine whether Defendants acted to facilitate the repossession by Snyder.

The parties have cited numerous cases involving police officers who are called to the scene of private repossessions, but neither party has identified Fourth Circuit precedent on this precise issue. As such, the Court must discern a workable standard from the countless district and circuit court cases on this topic.

Among the most helpful discussions of this issue comes from *Barrett v. Harwood*, 189 F.3d 297 (2d Cir. 1999), in which the Second Circuit stated the following:

> In the relevant case law, we discern a spectrum of police involvement at the scene of a repossession. At one end of the spectrum is *de minimis* police involvement not amounting to state action in aid of the repossession. For example, a police officer's mere presence at the scene is insufficient to constitute state action. . . .

> Further along the spectrum we find involvement greater than mere presence, yet still insufficient to constitute state action in aid of the repossession. . . . [For example, in *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980)] the repossessors summoned police officers after the debtor, Menchaca, resisted their attempts to take his car. Upon arrival at the scene, an officer informed the debtor that "repossession was a civil matter and that the only reason the police where there was to quiet a reported disturbance." The debtor alleged, but all the officers denied, that one officer also said she was going to arrest the debtor if he didn't

give the repossessors the keys. Even though such action by the officers went beyond mere presence, the Fifth Circuit ruled it did not constitute state action vis-à-vis the repossession.

When an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action.

*Barrett*, 189 F.3d at 302 (internal citations omitted). With this conception in mind, the Court is left to answer two questions: (1) Where along this spectrum does police conduct transition from neutral peacekeeping to facilitation of repossession? and (2) Where does the conduct of Defendants fall along this spectrum? The actions taken by Defendants are largely agreed upon by the parties, but what is disputed is where the boundary lies between peacekeeping and facilitation, and whether Defendants crossed that line.

Determining whether a police officer has aided the repossessor is a "fact-sensitive" inquiry and must be examined from the totality of the circumstances. *Id.* Courts look to factors such as: (1) whether the police arrived with the repossessor or were called to the dispute, *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985); (2) whether the police sided with the repossessor and asserted that the repossession was valid, *Abbott v. Latshaw*, 164 F.3d 141, 144 (3d Cir. 1998); (3) whether the police ordered the plaintiff to comply, *Hensley v. Gassman*, 693 F.3d 681, 685 (6th Cir. 2012); (4) whether the police threatened to arrest the plaintiff for objecting, *Abbott*, 164 F.3d at 144; and (5) whether the police used any physical force. *Hensley*, 693 F.3d at 685. Ultimately, "the overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004).

## 2. Qualified Immunity

In addition to judgment on the merits, Defendants request that the Court find they are shielded from liability by qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013). To be entitled to qualified immunity, a defendant must show that even if there was a constitutional violation, the right in question was not clearly established at the time that the defendant acted.[2] *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013).

Qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 526 U.S. 603 (1999). "Thus, although the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established," *id.* "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Harlow*, 457 U.S. at 818. An issue is said to be "clearly established" when it "has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the

---

[2] Of course, "if an officer did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)).

State." *Wilson*, 141 F.3d at 114. Ultimately, to avoid qualified immunity, "the existing authority must be such that the unlawfulness of the conduct is manifest." *Id.*

### B. Consideration of Defendants' Actions

#### 1. Officer Ball

It is undisputed in the record that Officer Ball had no direct contact with Plaintiff. Furthermore, there is simply no evidence that Officer Ball played an active role in the repossession. Although there is uncertainty about what amount of police conduct constitutes encouraging, facilitating, or aiding in a private repossession, there should be little doubt that an officer's mere presence at the scene, without more, is insufficient. *See, e.g.*, *Hanley v. Gassman*, 693 F.3d 681, 689 (6th Cir. 2012) (noting that a police officer's mere presence is insufficient to convert a private repossession into a state action); *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 190 (3d Cir. 2005) ("The mere presence of police at the scene of a private repossession does not, alone, constitute state action causing the deprivation of a protected property interest." (quoting *Abbott*, 164 F.3d at 147)); *McCollum*, 394 F.3d at 824 ("[A] police officer's standby presence to observe and maintain the peace at a self-help repossession does not amount to official participation in a repossession or seizure."); *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999) ("[A] police officer's mere presence at the scene is insufficient to constitute state action."); *Greco v. Guss*, 775 F.2d 161, 167 (7th Cir. 1985). As such, the Court will grant summary judgment in his favor.

#### 2. Lieutenant Cook

Likewise, it is undisputed that Lieutenant Cook had no direct contact with Plaintiff and did not play an active role in the repossession. Accordingly, summary judgment will be granted in favor of Lieutenant Cook for the same reasons as stated in Subsection IV.B.1.

### 3. Officer McKinley

Unlike Defendants Ball and Cook, Officer McKinley interacted with both Plaintiff and Snyder. As such, the Court needs to consider whether McKinley's participation in the repossession was sufficient to constitute facilitation of the repossession, which in turn would make the repossession a state action. Based on the record, it is not clear whether McKinley's conduct transformed from maintaining the peace into facilitating the repossession. A reasonable jury could reach either outcome. Therefore, summary judgment is not warranted on the merits. However, because McKinley's conduct did not violate a clearly established line between impartial peacekeeping and active participation, he is entitled to qualified immunity.

#### a. Fourth and Fourteenth Amendment Liability

The record shows that Officer McKinley arrived on the scene of the repossession and proceeded to speak with both Snyder and Plaintiff. Upon arrival, Snyder attempted to show McKinley the repossession order, but he "didn't really pay attention to the exact paperwork." (Dkt. 102-1 at 36). Nevertheless, McKinley proceeded to relay messages between Snyder and Plaintiff, and he interspersed his own opinions about the situation. It is undisputed that McKinley told Plaintiff that he "did not know what the mix-up could be," but "if the tow driver was wrong there was legal action she could take." (Dkt. 87-1 at 3–4; dkt. 102 at 4–5). He also stated to either Plaintiff or her mother that it might be in Plaintiff's "interest to go ahead and comply with [Snyder] . . . . Then she could work it all out with the court." (Dkt 87-1 at 3–4; dkt. 102 at 6). McKinley also said to Plaintiff's mother that "it was a civil issue and that there wasn't really anything we could do." (Dkt. 87-1 at 4; dkt. 102 at 6; dkt. 102-1 at 38). Additionally, Plaintiff described Officer McKinley's demeanor throughout the incident as "calm" and "mellow." (Dkt. 102-3 at 55). She stated that he "wasn't trying to be rude or anything." (*Id.*).

McKinley's statements and actions could reasonably be construed by a jury as demonstrating support for the repossession because "[e]ven without active participation, courts have found that an officer's conduct can facilitate a repossession if it chills the plaintiff's right to object . . . . A police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting." *Hensley*, 693 F.3d at 689–90.

For instance, McKinley's statement that he "did not know what the mix-up could be" could be construed as implying that he believed the repossession action was valid. *Cf. Abbott*, 164 F.3d at 149 (officer created a "curbside courtroom, in which he decided who was entitled to possession"). Similarly, stating that "if the tow driver was wrong there was legal action she could take" could be interpreted as saying that Plaintiff's present objections were unlawful or that recourse to the courts were her only option. Lastly, McKinley's opinion statement that Plaintiff should go ahead and comply could be construed as encouraging Plaintiff to cease her present objections.

Nevertheless, these actions could also be construed as fairly innocuous. McKinley may have been genuinely confused about the dispute and been trying to remain neutral. Telling Plaintiff that he did not fully understand the situation and offering alternatives to her present objections could be seen as simply helping diffuse a tense situation. It is undisputed that Plaintiff was "yelling, being loud, flailing her arms or waving her hands in the air, cursing, and using racial slurs towards Snyder." (Dkt. 102 at 8). Meanwhile, Plaintiff described McKinley as "calm" and "mellow." (Dkt. 102-3 at 55). He told Plaintiff he would "get both sides of the story" and that "really the only reason" he was there was "to make sure nobody gets hurt." (Dkt. 102-1 at 39). In fact, he told Plaintiff there was "nothing [he] could do to keep her from sitting in the vehicle because, you know, it's her vehicle and it's on private property." (*Id.*). Thus,

McKinley's actions could be construed by a jury as neutral peacekeeping rather than placing "the weight of the state is behind the repossession." *Hensley*, 693 F.3d at 689–90.

Because a reasonable jury could differ about whether McKinley's actions rose above mere peacekeeping to facilitation of the repossession, neither party is entitled to judgment as a matter of law on the merits. *See Anderson*, 477 U.S. at 248.

### b. Qualified Immunity

Although a reasonable fact finder could differ over whether McKinley's actions constituted state facilitation of a repossession without due process, the evidence demonstrates that the "unlawfulness of [McKinley's] conduct" was not "manifest." *Wilson*, 141 F.3d at 114. The right to be free from meaningful interference with one's possessory interest without due process is clearly established, but the precise contours of that right—in the context of police presence at a private repossession—are not clearly defined. Therefore, because McKinley's actions were not overtly supportive of the repossession, he is entitled to qualified immunity.

What has been clearly established by both the Supreme Court and the Fourth Circuit is that the state cannot act to deprive a citizen of a property interest without due process of law. *See Soldal*, 506 U.S. at 61; *Sunrise Corp. of Myrtle Beach*, 420 F.3d at 328. Furthermore, this and other courts have held that the right to due process includes being free from police pressure to surrender to a private repossession. *See, e.g.*, *Abbott*, 164 F.3d at 147; *Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915, 920 (W.D. Va. 2016); *Morozov v. Howard Cty., MD*, No. MJG-10-1515, 2012 WL 2048296, at *3 (D. Md. June 5, 2012).

Likewise, it has been clearly established that police presence alone at the scene does not amount to a due process violation. *Abbott*, 164 F.3d at 147 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980)). What has not been clearly established, however, is where the boundary lies between neutral peacekeeping and active facilitation or participation in a

private repossession. Courts have held that actions such as threatening arrest if the plaintiff does not cease objecting, declaring the repossession lawful, and using physical force to enable the repossession all cross the threshold from peacekeeping to repossession assistance. *See Abbott*, 164 F.3d at 144; *Hensley*, 693 F.3d at 685. However, McKinley's actions—such as providing advice and offering alternative courses of action—have not been clearly established in this Circuit as sufficient to constitute state action in a private repossession.

Plaintiff objects to Defendants' defense of qualified immunity on the grounds that this Court has already denied a claim of qualified immunity in this case. *See Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915 (W.D. Va. 2016). Granting qualified immunity at the summary judgment stage, however, is not inconsistent with the Court's previous decision to deny it at the 12(b)(6) stage. In its previous opinion, the Court was bound to accept the allegations in the Complaint as true. Based on the Complaint, the Court was led to believe that Defendants "reviewed the document of the repossession and declared that Goard should turn over her Honda Accord." *Id.* at 917. Furthermore, it was alleged that Defendants told Plaintiff "that if she did not turn over the vehicle to Snyder, she would be arrested or go to jail." *Id.* Based on those allegations, the Court held that Defendants had violated a clearly established right to due process. Now, relying on the undisputed facts in the record rather than mere allegations in the Complaint, the Court concludes that Defendant McKinley's actions were within "gray areas" rather than "transgressing bright lines." *Wilson*, 141 F.3d at 114. Therefore, he is entitled to qualified immunity.

### 4. Officer Howard

#### a. *Fourth and Fourteenth Amendment Liability*

Much like Officer McKinley, Officer Howard played an active role in the incident, but the question is whether his conduct rose to the level of state action in aid of a private

repossession. The record shows that Howard took the following actions: (1) he spoke to both Snyder and Plaintiff, (dkt. 102-2 at 67, 70–72); (2) he relayed Snyder's message that if Plaintiff did not turn over the keys, the tow would cost $200 extra for rekeying, (dkt. 87-1 at 4; dkt. 102 at 4); (3) he repeatedly told Plaintiff that "he did not want to arrest her and gave her multiple warnings about her conduct," (dkt. 102 at 9); and (4) he threatened to arrest Plaintiff on three separate occasions prior to Snyder requesting Plaintiff's key. (Dkt. 102 at 7).

The precise content of those threats of arrest is contested. Officer Howard claims that his threats of arrest were for disorderly conduct; Plaintiff asserts that she was told she would be arrested if she did not "give them [her] car." (Dkt. 102-2 at 100; dkt. 102-3 at 41, 48, 55, 57–58). A reasonable fact finder could resolve this factual dispute in favor of either party. The threats may have been limited to disorderly conduct or they may have been threats of arrest unless Plaintiff ceased objecting to the repossession. Because the Court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw*, 13 F.3d at 798, the Court will rely on Plaintiff's version of the threat when considering Defendant Howard's motion, and *vice versa* for Plaintiff's motion.

Defendant Howard's actions, taken together, could be found to constitute state action in the facilitation of a private repossession. Viewing the situation from the eyes of Plaintiff, Officer Howard's threats of arrest and relaying of Snyder's message regarding the rekeying fee could be reasonably construed as "signal[ing] to [Plaintiff] that the weight of the state is behind the repossession and that [she] should not interfere by objecting." *Hensley*, 693 F.3d at 690. Howard's actions—most notably the threats of arrest—could be said to have "so intimidate[d] [Plaintiff] as to cause [her] to refrain from exercising [her] legal right to resist a repossession." *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981). This is especially true if the jury were to find that Howard did, in fact, threaten Plaintiff with arrest if she did not cease

objecting altogether and surrender her vehicle. Such a threat would be patently supportive of the repossession. *See, e.g.*, *McCollum*, 394 F.3d at 821; *Abbott*, 164 F.3d at 149.

Nevertheless, Officer Howard's actions could also be reasonably interpreted as nothing more than neutral peacekeeping. For example, the jury could find that Officer Howard's threats of arrest were narrow and targeted: finding that Howard threatened to arrest Plaintiff only if she continued her disorderly conduct, but not if she continued her general objection to repossession. *Cf. McCollum*, 394 F.3d at 821 (The officer "threatened them with arrest *if they continued to resist*." (emphasis added)) ; *Abbott*, 164 F.3d at 149 (The officer "grabbed him by the arm and told him that he was under arrest" for failing to cooperate with the repossession.). Likewise, although Officer Howard relayed Snyder's message about the rekeying fee, he did not pick sides or arrive on the scene with Snyder. *Cf. McCollum*, 394 F.3d at 819 ("An officer's arrival with the repossessor could give the repossession a cachet of legality . . . ."); *Abbott*, 164 F.3d at 144 (finding a violation where officers determined the private repossession was valid).

Seeing as "[t]his area of the law is particularly fact-sensitive" and "the circumstances must be examined in their totality," a jury could reasonably find in favor of Plaintiff or Officer Howard on the question of whether Officer Howard's actions aided in the repossession. *McCollum*, 394 F.3d at 819 (quoting *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983)) . Moreover, the disagreement about the content of Officer Howard's threats of arrest is a genuine dispute regarding a material fact, which precludes summary judgment. It is for the finder of fact to determine whether Officer Howard was threatening to arrest Plaintiff for continued objection or merely for continued disorderly conduct, and the resolution of that factual issue could certainly "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Accordingly, neither party is entitled to summary judgment on the merits as to Defendant Howard.

### b. Qualified Immunity

As stated above, there is a genuine issue of material fact about the content of Officer Howard's arrest threats, and consequently the Court cannot determine as a matter of law whether his actions constituted active participation in the repossession.  Nevertheless, Howard may be entitled to qualified immunity regardless of how the pending factual dispute is resolved.  Because "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw*, 13 F.3d at 798, the Court will conduct the qualified immunity analysis under the presumption that Officer Howard threatened Plaintiff with arrest if she "didn't give them [her] car."  (Dkt. 102-3 at 41, 48, 55, 57–58).

An officer seeking qualified immunity must demonstrate that even if there was a constitutional violation, the right in question was not clearly established, *Henry*, 652 F.3d at 531, which means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Harlow*, 457 U.S. at 818.  As this Court has stated previously, it is clearly established that "police officers cannot actively participate in self-help repossession" and "their role is not to be participants in property deprivations without notice and opportunity to be heard."  *Goard*, 170 F. Supp. 3d. at 920 (citing *Soldal*, 506 U.S. at 61); *see also Fuentes*, 407 U.S. at 87.  What has not been clearly established in the Fourth Circuit, however, is precisely what level of involvement qualifies as state action in support of a private repossession.  Thus, a reasonable officer would know that he should not aid or participate in the repossession, but he may not be able to identify the line between neutral peacekeeping and active assistance.

This uncertainty about the precise distinction between permissible and impermissible police conduct does not necessarily entitle Officer Howard to qualified immunity.  Unlike Officer McKinley, whose actions fall within precisely the kind of "gray area[]," contemplated by

the qualified immunity jurisprudence, "the unlawfulness of [Officer McKinley's alleged] conduct [was] manifest." *Wilson*, 141 F.3d at 114. A reasonable officer would not have to make "bad guesses in gray areas" in order to determine that threatening someone with arrest unless they turned over their vehicle constitutes active facilitation of a private repossession. *Id.* He "would understand that what he is doing violates the right," *Harlow*, 457 U.S. at 818; *see also Henry*, 652 F.3d at 531 ("Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.").

Threatening arrest unless the property in dispute is surrendered is unequivocally supportive of the repossession; the thing practically speaks for itself. *See, e.g.*, *Abbott*, 164 F.3d at 144. If it is true that Officer Howard threatened Plaintiff with arrest unless she surrendered her vehicle, he clearly transformed from a neutral peacekeeper into a "participant[] in [a] property deprivation[]." *Goard*, 170 F. Supp. 3d. at 920. The "contours of the right" may not be precisely delineated, but the right is "sufficiently clear that a reasonable official would understand that" what Officer Howard did "violates that right." *Harlow*, 457 U.S. at 818.

Simply put, a reasonable officer would know that he may not participate or facilitate a private self-help repossession; that much is clearly established. Furthermore, it would be obvious to a reasonable officer that Officer Howard's alleged actions—most notably threatening the property owner with arrest unless she consents to the repossession—were supportive of the repossession rather than neutral and thus impermissible. Instead, Officer Howard allegedly participated in the dispute and used the weight of his authority to encourage and cajole Plaintiff to surrender her vehicle to Snyder.

Therefore, because Officer Howard's alleged actions—construed in a light most favorable to the nonmoving party—transgressed a clearly established right to due process prior

to state action in deprivation of a property, he is not entitled to qualified immunity. A reasonable officer would know that threatening arrest unless Plaintiff consents to a private, self-help repossession violates Plaintiff's right to due process.

## V. CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's motion for summary judgment. (Dkt. 87). She is not entitled to judgment as a matter of law against Defendants. Furthermore, Defendants' motion for summary judgment, (dkt. 101), will be **GRANTED in part and denied in part**. The Court will grant summary judgment in favor of Defendants Ball and Cook, seeing as they had no interaction with Plaintiff and did not participate in the repossession of her vehicle.

As for Defendant McKinley, his conduct was "closer to the line," so to speak. He played some role in the repossession, and a reasonable jury could find that his participation was sufficient to constitute active facilitation, which would convert the repossession into a state action. As such, he is not entitled to summary judgment on the merits. However, because Defendant McKinley's conduct was not plainly in support of the repossession, the Court will grant summary judgment in his favor on the basis qualified immunity.

The record is less clear regarding Officer Howard; there is a genuine dispute of material fact regarding his threats of arrest. Accordingly, he is not entitled to summary judgment on the merits. As for his request for qualified immunity, it will be denied at this time. If the factual dispute were decided in Plaintiff's favor, Officer Howard's conduct would violate a clearly established right, precluding him from qualified immunity.

The Clerk of the Court is directed to send a copy of this Order to Plaintiff, Defendants, and all counsel of record. An appropriate Order will issue.

Entered this __2nd__ day of June, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE